UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROGELIO E. HEADLEY-OMBLER,

            Plaintiff,

                                                        DECISION AND ORDER

    -against-                                 12-CV-2631 (WFK) (LB)

ERIC HOLDER, United States Attorney General,
JANET NAPOLITANO, Secretary of Homeland
Security, and DIRECTOR of United States
Citizenship and Immigration Services of Buffalo,
and New York City District of New York,

           Defendants.

------------------------------------------------------------X
**WILLIAM F. KUNTZ, II, United States District Judge**

Rogelio E. Headley-Ombler ("Plaintiff") commenced this action against Eric Holder, Attorney General of the United States, Janet Napolitano, the Secretary of Homeland Security, and the Director of United States Citizenship and Immigration Services ("USCIS")[1] of Buffalo and the New York City District of New York (collectively "Defendants"), seeking judicial review of the denial of his Form N-600 application for a certificate of citizenship, pursuant to 8 U.S.C. § 1421(c), and a declaratory judgment of United States nationality, pursuant to 8 U.S.C. § 1503(a). Defendants move to dismiss Plaintiff's action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted, respectively. For the reasons stated below, the Court grants Defendants' motion and dismisses this action with prejudice.

---

[1] USCIS is a government agency with local offices across the world. *About Us*, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, www.uscis.gov/About_Us.

1

# BACKGROUND

## I. Plaintiff's Personal Background

Plaintiff was born in Panama on September 6, 1970, and was admitted to the United States as a lawful permanent resident in January 1981. A178.[2] On November 9, 1988—two months after Plaintiff's eighteenth birthday—Plaintiff's mother became a naturalized citizen of the United States. A31. According to Plaintiff, his mother's petition for naturalization was "approved" prior to Plaintiff's eighteenth birthday. Dkt. No. 1 (Compl.) at 4. However, Plaintiff asserts his mother was not scheduled for a naturalization ceremony until after Plaintiff's eighteenth birthday. *Id.*

In 1991, Plaintiff was convicted of first-degree assault in New York state court and sentenced to an imprisonment term of one-and-one-half to four-and-one-half years. A125–30. That conviction arose from an incident in which Plaintiff shot an individual in the groin. Compl., Ex. 2 (Br. for Resp't, *Headley-Ombler v. Holder*, 131 S.Ct. 71 (2010) (No. 09-9804)) ("AG Br.") at 5.

## II. The Removal Proceedings

Based on that conviction, , while Plaintiff was serving his sentence, in April 1997, the former Immigration and Naturalization Service ("INS") placed Plaintiff in removal proceedings and charged him with removability under 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien convicted of an aggravated felony. A179–81.

During removal proceedings before an Immigration Judge ("IJ"), Plaintiff claimed to have derived citizenship through his mother's naturalization. A154–55, A162–63, A172–73. The IJ granted Plaintiff two continuances to give Plaintiff time to collect and present evidence

---

[2] Citations to the administrative record of Plaintiff's immigration history, as maintained by the Department of Homeland Security, USCIS, are denoted by reference to the Declaration of Assistant U.S. Attorney Margaret Kolbe, paginated A001 to A202.

2

substantiating his claim of citizenship. AG Br. at 6. Nevertheless, Plaintiff did not produce any evidence supporting his claim of derivative citizenship. *Id.* On July 7, 1998, the IJ ordered Plaintiff removed from the United States, determining that he had failed to provide evidence of derivative citizenship and that Plaintiff was not eligible for relief from removal. A139–45. Plaintiff appealed to the Board of Immigration Appeals ("BIA"), again arguing that he derived citizenship through his mother's naturalization. A136–37. On January 28, 1999, the BIA dismissed Plaintiff's appeal, emphasizing Plaintiff's lack of evidence and noting the IJ's "extraordinary amount of patience with [Plaintiff] in regard to" Plaintiff's derivative citizenship defense. A136. The BIA also advised Plaintiff that if he obtained evidence of his derivative citizenship, he could file a motion to reopen with the BIA. A137.

On January 20, 2000, Plaintiff filed a petition for a writ of habeas corpus in the Southern District of New York. Petition for Writ of Habeas Corpus, *Headley v. Dep't of Justice*, 00 Civ. 392 (S.D.N.Y. Jan. 20, 2000) (Hellerstein, J.), ECF No. 1. Plaintiff and the Government agreed to a stipulated remand to the BIA to determine whether Plaintiff was eligible for relief under former Section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c), in light of *INS v. St. Cyr*, 533 U.S. 289 (2001). A131. On May 22, 2002, the BIA remanded Plaintiff's case to the IJ. A133–34. On December 12, 2002, the IJ found Plaintiff was ineligible for Section 212(c) relief and ordered his removal from the United States. A84–85. On May 29, 2003, the BIA dismissed Plaintiff's appeal from the IJ's decision. A186–88. Plaintiff did not make any citizenship claims in these later proceedings before the IJ or the BIA.

On May 18, 2009, Plaintiff filed a motion with the BIA to reopen his case and terminate removal proceedings, again contending he had acquired derivative citizenship when his mother became a naturalized citizen. A34–46. Plaintiff provided a certificate of naturalization showing

3

his mother had been naturalized on November 9, 1988, two months after Plaintiff's eighteenth birthday. A48. Plaintiff argued the Government's administrative delay in processing his mother's naturalization application, such that she was naturalized after he turned eighteen, violated his due process and equal protection rights, and that the Government should be estopped from denying his naturalization application. A40–43. On June 26, 2009, the BIA denied Plaintiff's motion to reopen on timeliness grounds, noting Plaintiff had filed the motion six years after the BIA's original decision. A83 (citing 8 C.F.R. § 1003.2(b)(2), (c)(2) (90-day filing deadline)). Nor was the BIA, after considering Plaintiff's evidence and arguments, persuaded to reopen or reconsider its earlier decision *sua sponte*. *Id.*

The Second Circuit denied Plaintiff's petition for review of the BIA's decision as lacking "an arguable basis in law or fact." *See* AG Br. at 11. On November 30, 2009, Plaintiff filed a petition for a writ of certiorari with the United States Supreme Court, which was placed on the docket on March 25, 2010. Compl. at 30. In his brief opposing Plaintiff's petition, the Attorney General noted that Plaintiff "is not precluded from applying to United States Citizenship and Immigration Services for a certificate of citizenship." AG Br. at 19 n.7. The Supreme Court ultimately denied Plaintiff's petition. *See Headley-Ombler v. Holder*, No. 09-9804, 131 S.Ct. 71 (Oct. 4, 2010).

### III. Plaintiff's Application for a Certificate of Citizenship

On March 21, 2011, Plaintiff filed a Form N-600 application for a certificate of citizenship on the basis of derivative citizenship through his mother's naturalization. A22–31. On August 25, 2011, USCIS denied Plaintiff's application, and Plaintiff acknowledged personal service of the decision on October 14, 2011. A11–18. Plaintiff filed an appeal to the Administrative Appeals Office ("AAO") on November 7, 2011, but the AAO did not receive the

appeal until November 15, 2011. A5, A19–21. On December 2, 2011, the AAO rejected Plaintiff's appeal as untimely. A4–5. On December 28, 2011, USCIS determined that Plaintiff's appeal, if construed as a motion to reopen, would be denied for failure to present new evidence or demonstrate legal error. A7–8.

### IV. Plaintiff's Removal and The Instant Action

On November 25, 2011, after Plaintiff completed his criminal sentence, U.S. Immigration and Customs Enforcement ("ICE") took Plaintiff into custody in order to remove him from the United States based on the IJ's July 7, 1998 order of removal and the BIA's May 29, 2003 dismissal of Plaintiff's appeal. A185. On January 5, 2012, Plaintiff filed the instant action in the Southern District of New York. *See* Compl. The complaint claims the District Court has jurisdiction, pursuant to 8 U.S.C. § 1421(c), to stay Plaintiff's removal and grant him citizenship. *Id.* at 3.

On January 25, 2012, Plaintiff was removed from the United States to Panama. A1–3. On March 8, 2012, Chief Judge Preska of the Southern District of New York issued an order construing this action as an action for declaratory judgment of nationality filed pursuant to 8 U.S.C. § 1503(a). Dkt. No. 5 ("Order Directing Affirmation") at 3–4. On May 24, 2012, Judge Preska transferred this action to this Court based on her determination that venue was proper in the Eastern District of New York. Dkt. No. 9 ("Transfer Order").

## DISCUSSION

### I. Standard of Review

#### A. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1)

The Court must dismiss a claim for lack of subject matter jurisdiction under Rule 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it." *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000). "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). The party asserting subject matter jurisdiction has the burden of proving its existence by a preponderance of the evidence. *Makarova*, 201 F.3d at 113. In determining whether subject matter jurisdiction exists, courts are permitted to look to materials outside the pleadings, including affidavits. *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

### B. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court construes the claims liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). To survive a motion to dismiss, each claim must set forth sufficient factual allegations, accepted as true, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not credit "legal conclusions" in a claim, or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678) (internal quotations and alteration omitted).

When determining the sufficiency of a claim under Rule 12(b)(6), the Court may consider only the allegations on the face of a pleading. Nevertheless, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). The Court may consider documents outside of the pleading if the documents are integral to the pleading or subject to judicial notice. *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir.

2006); *see also Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal editing omitted).

## II. Derivative Citizenship

Pursuant to Section 321 of the INA, codified at 8 U.S.C. § 1432, an individual born abroad, to alien parents, who reached age eighteen before the enactment of the Child Citizenship Act of 2000 on February 27, 2001,[3] may derive United States citizenship through the naturalization of a parent or parents where the following conditions have been met:

>  (1) The naturalization of both parents; or

>  (2) The naturalization of the surviving parent if one of the parents is deceased; or

>  (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if

>  (4) Such naturalization takes place while such child is under the age of eighteen years; and

>  (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

8 U.S.C. § 1432(a), *repealed by* Child Citizenship Act of 2000, Pub. L. 106-395, 114 Stat. 1632.

---

[3] Congress enacted the Child Citizenship Act of 2000 to "streamline automatic citizenship for children born abroad . . . at least one of whose parents subsequently naturalized as a United States citizen." *In re Rodriguez-Tejedor*, 23 I. & N. Dec. 153, 156–57 (BIA 2001) (quoting H.R. Rep. No. 106-852, at 4 (2000)) (internal quotation marks omitted). The Act repealed 8 U.S.C. § 1432 and replaced 8 U.S.C. § 1431 with "a more generous provision." *Id.* at 156. The revised provisions do not apply to Petitioner because he was over the age of eighteen when the Act took effect. *Id.* at 163 ("[I]f an individual . . . is over 18 years of age during the validity of the statute now in effect [which entered into effect on February 27, 2001], he cannot meet the material conditions for automatic citizenship.").

## III. Pathways to Claim Derivative Citizenship

An alien generally may assert a derivative citizenship claim in two ways. First, if the alien is in removal proceedings, he can claim citizenship as a defense. *See Henry v. Quarantillo*, 684 F. Supp. 2d 298, 302 (E.D.N.Y. 2010) (Trager, J.), *aff'd*, 414 F. App'x 363 (2d Cir. 2011). If the IJ rejects the defense and orders removal, the alien may, after properly exhausting administrative remedies, file a petition for review of the citizenship claim "with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(b)(2).

Alternatively, an alien "may proceed administratively by filing an N-600 application with USCIS and then may appeal any negative decision to the AAO." *Henry*, 684 F. Supp. 2d at 302. "If the application is denied and all administrative appeals exhausted, the applicant may seek judicial review in a district court" pursuant to 8 U.S.C. § 1503(a). *Boyd v. Immigration & Customs Enforcement*, 344 F. Supp. 2d 869, 872 (E.D.N.Y. 2004) (Gershon, J.) (citing 8 U.S.C. § 1503).

> Section 1503(a) of Title 8 vests a district court with jurisdiction to grant a declaration of citizenship to any person who claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency upon the ground that he is not a national of the United States, except if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding or (2) is in issue in any such removal proceeding.

*Wilks v. Farquharson*, 450 F. App'x 1, 2 (2d Cir. 2011) (internal quotation marks and editing omitted).

In this case, Plaintiff filed his complaint pursuant to 8 U.S.C. § 1421(c). Section 1421(c) is the provision providing for judicial review where "an application for naturalization under this subchapter is denied." 8 U.S.C. § 1421(c). Plaintiff seeks review of denial of an application for

a certificate of citizenship, not an application for naturalization. Therefore, despite Plaintiff's citation, Section 1421(c) does not apply. *See* Dkt. No. 5 ("Order Directing Affirmation") at 3. Furthermore, because Plaintiff's application was not filed as a defense to a removal proceeding, Section 1252(b)(5) also does not apply. However, though not specifically invoked by Plaintiff, 8 U.S.C. § 1503(a) potentially provides the Court with jurisdiction over this matter. *See id.* at 3 (construing Plaintiff's complaint as an action for declaratory judgment of nationality filed pursuant to 8 U.S.C. § 1503(a)). At issue is whether Plaintiff's declaratory judgment action is precluded by the first jurisdictional exception to Section 1503(a) relief, triggered where a plaintiff's citizenship status "arose by reason of, or in connection with any removal proceeding." 8 U.S.C. § 1503(a)(1). The second jurisdictional exception—where a plaintiff's status as a citizen is "in issue in any such removal proceeding"—does not apply here because Plaintiff's status is not currently in issue in a pending removal proceeding. *See Rios-Valenzuela v. Dep't of Homeland Sec.*, 506 F.3d 393, 397–98 (5th Cir. 2007).

### IV. The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Declaratory Judgment Action

#### A. The Plain Meaning of Section 1503(a)

Defendants argue Plaintiff is barred from bringing this declaratory judgment action because "the issue of Plaintiff's nationality status 'arose by reason of' and 'in connection with' a removal proceeding, and was, in fact, 'in issue' in such proceeding." Defs.' Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Defs.' Br.") at 6. Specifically, Defendants point out that Plaintiff claimed derivative citizenship through his mother as a defense to the removal proceedings that concluded with the IJ's July 7, 1998 order of removal and the BIA's January 28, 1999 dismissal of Plaintiff's appeal. Although Plaintiff did not claim derivative citizenship in his 2000 habeas petition or the ensuing immigration court proceedings in 2002 and 2003,

9

Plaintiff did raise the same argument when he filed a motion with the BIA in 2009 to reopen his case—a motion that was later denied by the BIA and led to a denial of certiorari by the Supreme Court. Defendants contend "the mere fact that plaintiff had the opportunity to litigate his nationality claim in a removal proceeding" should trigger the first jurisdictional exception of Section 1503(a), precluding Plaintiff from bringing the present action. Defs.' Br. at 7.

Neither the Supreme Court nor the Second Circuit has addressed whether Section 1503(a)'s first jurisdictional exception, which bars an action for a declaration of citizenship where "the issue of such person's status as a national of the United States arose by reason of, or in connection with any removal proceeding," precludes an action such as the one at issue here. 8 U.S.C. § 1503(a)(1). For the reasons that follow, this Court concludes that it lacks subject matter jurisdiction over Plaintiff's declaratory judgment action.

The Court's conclusion begins with the plain meaning of 8 U.S.C. § 1503(a). "Statutory analysis necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there." *United States v. Shellef*, 718 F.3d 94, 102 (2d Cir. 2013) (citations omitted). "In conducting such an analysis, [the court will] review the statutory text, considering the ordinary or natural meaning of the words chosen by Congress, as well as the placement and purpose of those words in the statutory scheme." *Cruz-Miguel v. Holder*, 650 F.3d 189, 195 (2d Cir. 2011) (citations omitted). The statute's structure also matters, for the "meaning of a word or phrase cannot be determined in isolation, but must be drawn from the context in which it is used." *In re Sept. 11 Prop. Damage Litig.*, 650 F.3d 145, 155 (2d Cir. 2011) (citations and internal editing omitted).

The plain meaning of 8 U.S.C. § 1503(a) is clear. An alien who has raised a nationality claim in a past or pending removal proceeding is barred from bringing a declaratory judgment

action under Section 1503(a). The second jurisdictional exception applies to pending removal proceedings. "By its plain language, § 1503(a)(2) bars a district court from reviewing an administrative decision denying a non-citizen's claim of citizenship if the question of that person's nationality is 'in issue' in a pending removal proceeding." *Wilks*, 450 F. App'x at 3 (district court had no jurisdiction to hear declaratory judgment action brought while removal proceedings were ongoing); *see also Rios-Valenzuela*, 506 F.3d at 397 ("a purported citizen may not initiate or begin a declaratory judgment action to establish his citizenship if it is already being litigated in a removal proceeding"). Hence, an alien who raises a citizenship defense during removal proceedings, files an N-600 application for citizenship, and receives an adverse decision from the USCIS and AAO, is prohibited from bringing a Section 1503(a) action while removal proceedings are still pending.

The first jurisdictional exception, which prohibits a Section 1503(a) action where an individual's "status as a national of the United States . . . arose by reason of, or in connection with any removal proceeding," applies to removal proceedings that have already concluded. 8 U.S.C. § 1503(a)(1); *see Rios-Valenzuela*, 506 F.3d at 398 ("If the exceptions apply only while a removal proceeding is still pending, then the first exception would be superfluous since the second exception covers instances where the removal proceeding is still pending. The past tense 'arose' used in the first exception also indicates that this provision applies to concluded removal proceedings.") (quoting *Said v. Eddy*, 87 F. Supp. 2d 937, 941 (D. Alaska 2000) (Holland, J.)).[4] The issue here is when the issue of nationality "[arises] by reason of, or in connection with any removal proceeding." 8 U.S.C. § 1503(a)(1). In this Court's view, the inquiry is

---

[4] In light of this straightforward interpretation, the Fifth Circuit's statement in *Rios-Valenzuela* that "once removal proceedings have run their full course and terminated, any future citizenship claim would not arise in those removal proceedings" is confusing and internally inconsistent. 506 F.3d at 399. The hypothetical situation described by the *Rios-Valenzuela* court is precisely the situation contemplated by the first jurisdictional exception.

straightforward—if an alien has previously raised nationality as a defense during removal proceedings, that alien is then barred from later bringing a Section 1503(a) claim, because "the issue of such person's status as a national of the United States" will have necessarily arisen "by reason of" or "in connection with" the past removal proceedings, no matter how long ago those proceedings terminated. *Id.*

Section 1503(a) does not define the phrases "arose," "by reason of," or "in connection with." Where there is no statutory definition of a term, the Court must "give it its ordinary meaning." *United States v. Santos*, 553 U.S. 507, 511 (2008). Although federal courts have not endeavored to define these terms in the context of this statute, the courts have recognized their ordinary meanings in the context of other statutes. To "arise" is defined as "to come into being," "to come about," "to become apparent in such a way as to demand attention," "to come into being or notice." *TRW Inc. v. Andrews*, 534 U.S. 19, 32 (2001) (citing Webster's Third New International Dictionary 117 (1966) and Black's Law Dictionary 138 (rev. 4th ed. 1968)). "By reason of" simply means "because of." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (quoting 1 Webster's Third New International Dictionary 194 (1966)). The phrase "in connection with," by contrast, has a broader meaning and does not imply a causal connection. *Empire HealthChoice Assur. Inc. v. McVeigh*, 396 F.3d 136, 157 (2d Cir. 2005); *see also United States v. Loney*, 219 F.3d 281, 284 (3d Cir. 2000) ("in connection with" denotes a "wide range of relationships"); *United States v. Wyatt*, 102 F.3d 241, 247 (7th Cir. 1996) ("the meaning of the phrase 'in connection with' should be construed expansively"); *United States v. Thompson*, 32 F.3d 1, 7 (1st Cir. 1994) ("[T]he phrase 'in connection with' should be interpreted broadly . . . .").

Taking these definitions together, the phrase "arose by reason of, or in connection with any removal proceeding" erects a strict jurisdictional bar to a Section 1503(a) action whenever

an alien has raised a nationality defense during removal proceedings. For instance, if an alien were to bring a Section 1503(a) action one week after a final administrative order of removal, following proceedings wherein that alien raised a nationality defense, the issue of that alien's status as a national would clearly have come about "by reason of" the past removal proceedings. In such a scenario, the Section 1503(a) action would be a naked attempt to relitigate the citizenship issue, triggered by the administrative removal order. Likewise, had several years passed in the hypothetical above, the alien would still be barred from bringing a Section 1503(a) action because the nationality issue previously arose "in connection with" the past removal proceedings, a broad phrase that precludes even Section 1503(a) actions not brought to directly or immediately challenge a past removal order. Therefore, an alien who raises the issue of citizenship during removal proceedings, whether those removal proceedings are pending or terminated, is barred from later bringing a Section 1503(a) declaratory judgment action, regardless of how much time has passed between any conclusion of removal proceedings and the initiation of the Section 1503(a) action. Accordingly, the Court lacks jurisdiction over Plaintiff's Section 1503(a) action because he had raised derivative citizenship as a defense during the removal proceedings that terminated in May 2003.

### B. Interpretations of Other Courts

Several courts have raised concerns that this reading of Section 1503(a)'s jurisdictional bar would unduly restrict a plaintiff's right to pursue a citizenship claim. In particular, the late Judge Trager of the Eastern District of New York held in *Henry v. Quarantillo* that this reading would go "too far in restricting removed persons from ever having a further opportunity to present their claims to eligibility for the 'most precious right' of United States citizenship," as it "would mean that a plaintiff would be forever foreclosed from bringing a § 1503(a) action, even

after his removal proceedings had terminated, if his citizenship was put in issue in those removal proceedings." *Henry*, 684 F. Supp. 2d at 303–04 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 159 (1963)); *see also Rios-Valenzuela*, 506 F.3d at 399 ("[W]e do not read the exception as forever hanging an albatross around the neck of those who first raise citizenship as a defense in a removal proceeding."); *Anees*, 2013 WL 5366070, at *3 (it would be an "absurd result" to "forever restrict[] an additional application for citizenship once an initial removal proceeding terminated") (citing *Henry*, 684 F. Supp. 2d at 304).

Instead, Judge Trager concluded "there is a delicate balance to determining when a § 1503(a) claim to citizenship, made after citizenship was placed in issue in removal proceedings, is far enough removed from those proceedings so as not to have arisen 'in connection with' them." *Henry*, 684 F. Supp. 2d. at 304. In arriving at this standard, Judge Trager cited a Fifth Circuit decision, which stated in dicta that "[s]o long as a citizenship claim finds its genesis outside of the context of removal proceedings, the exception is no bar to jurisdiction; thus, for example, once removal proceedings have run their full course and terminated, any future citizenship claim would not arise in those removal proceedings." *Id.* (quoting *Rios-Valenzuela v. Dep't of Homeland Sec.*, 506 F.3d 393, 399 (5th Cir. 2007)). In addition, Judge Trager relied on dicta from *Said v. Eddy*, *see id.* at 304–05, where the district court rejected a Section 1503(a) action because it was based directly on the plaintiff's terminated removal proceedings, *see Said*, 87 F. Supp. 2d at 941. However, the *Said* court noted that a future action was possible: "When and if plaintiff is at some future time denied a right or privilege of a United States national by a department, agency, or official of the United States, she will be entitled to bring an action as authorized by Section 1503; and the interposition of such other federal action will take plaintiff's case out of exception (1) to subsection 1503(a)." 87 F. Supp. 2d at 943.

14

Relying on these statements by the Fifth Circuit and the District of Alaska, Judge Trager held the plaintiff in *Henry* was not barred from bringing his declaratory judgment action because "after [the plaintiff's] removal, he alleged a new, independent denial of a right or privilege of nationality that forms the basis of his current § 1503(a) action." 684 F. Supp. 2d at 305. Specifically, Judge Trager held that because the plaintiff filed his second N-600 application, "well after removal proceedings had terminated, and because its denial constitutes the type of federal action that may form the basis of a § 1503(a) claim, denial of this N-600 serves as 'the interposition of such other federal action' that 'take[s] plaintiff's case out of exception (1) to subsection 1503(a).'" *Id.* (quoting *Said*, 87 F. Supp. 2d at 943). As such, Judge Trager found he had subject matter jurisdiction to consider the plaintiff's derivative citizenship claim and then proceeded to the merits of that claim. *Id.*

This Court respectfully disagrees with the reasoning of *Henry* and the authority cited therein. Citizenship is indeed "a most precious right." *Kennedy*, 372 U.S. at 159. However, Congress has nearly plenary power to control the means by which aliens obtain citizenship, and the Court is not at liberty to stray from the plain meaning of duly enacted immigration statutes. U.S. Const. art. I, § 8 ("The Congress shall have power . . . [t]o establish an uniform Rule of Naturalization."); *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) ("This Court has repeatedly emphasized that 'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens."). As explained below, the Court's interpretation of Section 1503(a) is consistent with the statutory framework erected by Congress while preserving an alien's right to seek a judicial determination of his or her nationality.

15

Congress has enacted a statutory framework that carefully delineates when and how an alien may challenge removal proceedings and assert claims of citizenship. As the Seventh Circuit explained in *Ortega v. Holder*:

> [Section 1503(a)'s jurisdictional exceptions] are designed to protect removal proceedings from judicial interference and preserve 8 U.S.C. § 1252 as the exclusive means of challenging a final order of removal. A party may not frustrate the Government's effort to remove him by instituting an action under 8 U.S.C. § 1503(a) while proceedings are ongoing. Similarly, a party may not use § 1503(a) to frustrate Congress's effort to channel all appeals from removal proceedings—including those in which the alien raised claims of nationality—through 8 U.S.C. § 1252.

592 F.3d 738, 743–44 (7th Cir. 2010). This Court will not subvert Congress's clearly expressed will that removal proceedings may only be challenged through appeal under 8 U.S.C. § 1252.

Furthermore, this Court's interpretation of Section 1503(a) does not undermine an alien's ability to obtain a judicial determination of the nationality issue. "Congress established a specific procedure for reviewing claims of nationality raised in the context of removal proceedings." *Ortega*, 592 F.3d at 744. Under 8 U.S.C. § 1252(b)(2), if an IJ rejects an alien's citizenship defense and orders removal, the alien may, after properly exhausting administrative remedies, file a petition for review of the citizenship claim "with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(b)(2). "If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim." *Id.* at § 1252(b)(5)(A). If the court of appeals instead finds that a "genuine issue of material fact about the petitioner's nationality is presented," the court will "transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the

16

district court under section 2201 of Title 28." *Id.* at § 1252(b)(5)(B). "Thus, an individual whose claim of nationality is rejected in the context of removal proceedings, and whose claim also involves a genuine and material factual dispute, is provided the same mechanism for redress set forth in 8 U.S.C. § 1503(a)—a declaratory judgment action." *Ortega*, 592 F.3d at 744. Therefore, as the Seventh Circuit concluded in *Ortega*, "if the question of nationality first arises in the context of a removal proceeding, the person must pursue his claims through those proceedings, culminating either with a declaration or denial of nationality." *Id.*

In any event, even under the reasoning of *Henry*, *Rios-Valenzuela*, and *Said*, Plaintiff's nationality claim arose by reason of or in connection with his long-since terminated removal proceedings. According to the *Rios-Valenzuela* court, it is "the context of how the particular issue of citizenship arose rather than the mere timing of events that determines the applicability of § 1503(a)(1)." 506 F.3d at 398. When Plaintiff filed the Form N-600 application on March 21, 2011, he was still incarcerated and had not yet been removed. His application came on the heels of a failed attempt to reopen his case and terminate removal proceedings. That application was denied by USCIS on August 25, 2011. Plaintiff filed the instant action on January 5, 2012, just days after the failure of his administrative appeal and while Plaintiff was being held in ICE custody in preparation for his removal. His complaint raises the same evidence and arguments considered by the IJ, the BIA, the USCIS, and the AAO. Under these circumstances, there can be no doubt that Plaintiff's Section 1503(a) action was a last-ditch attempt to forestall removal, and the citizenship claim asserted therein thus directly arose "by reason of" and "in connection with" the past removal proceedings. Therefore, the Court lacks jurisdiction over Plaintiff's Section 1503(a) action, even under the reasoning of the *Henry*, *Rios-Valenzuela*, and *Said* courts.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED. All claims against Defendants are dismissed with prejudice. The Clerk is directed to enter judgment for Defendants in accordance with this Decision and Order and to close the case.

## SO ORDERED

Dated: Brooklyn, New York
December 5, 2013

                                          s/William F. Kuntz, II
                                          HON. WILLIAM F. KUNTZ, II
                                          United States District Judge